27582, 27638. JACKSON COMPANY *v.* FARMERS PEANUT COMPANY; and *vice versa.*

Decided December 5, 1939.

*E. L. Smith,* for plaintiff.
*Jeff A. Pope, S. P. Cain,* for defendants.

Stephens, P. J. Jackson Company brought an action for breach of contract against Farmers Peanut Company. The plaintiff alleged in count 2 of the petition that the plaintiff had purchased of the defendant two cars of runner two peanuts at the price of 4⅜ cents per pound f.o.b. cars Cairo, Georgia, to be delivered, one car in November, 1936, and one car in December, 1936, under a written contract containing these specifications: "Rules Southeastern Peanut Association," and "brokerage paid by the sellers;" that the defendant failed to deliver the peanuts in accordance with the contract and thereby breached the contract; that under the terms of the contract the rules of the Southeastern Peanut Association were made a part of the contract, and section 6 of rule 11 reads

as follows: "If seller fails or refuses to make shipment according to contract as prescribed in this rule, after receipt of buyer's instruction, the buyer, after telegraphic notice of his intention to do so given 24 hours in advance, confirmed by letter, may, at any time within 48 hours, cancel the unfilled portion of the contract for which shipment is due and has not been made, or repurchase for account of the seller the products for which shipment is in default through any recognized peanut products broker. The original seller shall be responsible to buyer for any loss plus the expense of repurchasing and shall account to seller for any profits realized in the repurchase, less the expense of the repurchase; such repurchase to be for shipment conforming as nearly as possible to the original contract. The buyer must exercise one or the other of these options, unless otherwise agreed with the seller."

The plaintiff further alleged that on December 10, 1936, it inquired of the defendant by telegraphing the defendant as follows: "Advise promptly if satisfactory we buy car rutwos to fulfill November shipment our contract and draw on your company for difference between contract price and cost," and receiving no reply, the plaintiff, on December 12, assumed that the defendant did not contemplate making delivery and telegraphed the defendant at Cairo, Georgia, as follows: "Buying car rutwos Monday five one half replacing undelivered November car on contract and charging difference to you," and on the same day wrote the defendant a letter confirming the telegram and saying: "This is to serve as notice that we are placing this car elsewhere and are charging the difference between our contract price with you and five one-half cents to your account;" that (paragraph 6) by the foregoing the plaintiff complied with rule six of the association, and made repurchase to replace the car so undelivered, the peanuts purchased being of the same grade, quality, and kind as covered by the contract, and having been purchased at the price of five and one-half cents per pound, making a difference between the contract price and the price of said repurchase of $337.50; that, on January 2, 1937, the plaintiff telegraphed the defendant at Cairo, Georgia, as follows: "Unless you wire car number December car rutwos on order we will buy car rutwos at five three-quarters cents per pound and charge to your account stop this price subject our being able to cover at this figure," to which the plaintiff received no reply, and also on the

same day transmitted to the defendant a copy of said telegram in a registered letter, which the defendant received, reciting a copy of the telegram; that (paragraph 9) by the foregoing the plaintiff complied with rule 6 of the association, and on January 2, 1937, "repurchased the car of peanuts contracted by the defendant to be delivered during the month of December, 1936, but had to pay for same 5⅞¢ per pound instead of 5¾¢ per pound, thus making a difference in the contract price and the repurchase of $450. Plaintiff purchased both of said cars . . from Newsom & Kerwin of Chicago, Illinois, a recognized peanut products broker. The first car purchased from Blakely Peanut Company, Blakely, Georgia, and the second from Pelham Oil Company of Pelham, Georgia." The plaintiff prayed judgment for $787.50 besides interest.

The defendant filed demurrers to paragraphs 6 and 9 of count 2 on the ground, among others, that it was not shown that the car was purchased within the time provided for in rule 6, and, as to paragraph 9, because the peanuts were purchased on the same day the defendant was notified of the plaintiff's intention to so purchase. These demurrers were overruled. The defendant answered count 2, denying all paragraphs except paragraph 1 which alleged that the defendant was a corporation with its principal place of business in the county. The defendant amended this answer by alleging that section 6 of the rules of Southeastern Peanut Association provided that if the seller fails or refuses to make shipment the buyer must either cancel the unfilled portion of the contract or repurchase for account of the seller, the products of which shipment is in default, such purchase being made through a member of the association and after notice to the seller, and that said rights were not cumulative, but the purchaser was required to exercise one or the other of said options.

After the plaintiff had introduced oral and documentary evidence, the defendant introduced rule 10 of Southeastern Peanut Association providing that where hours or days are specified in rules Sundays and holidays are not included, and rule 9 of the association providing that "receipt of telegram shall mean receipt at the office of the telegraph company at destination." Thereupon the court directed a verdict for the plaintiff and the jury found the full amount sued for, $787.50. The defendant moved for a new trial on the general grounds and on special grounds assigning error

on the admission in evidence of a number of letters and telegrams over the defendant's objections to the effect that the documents were hearsay as to movant, and because there was no evidence showing either Newsom & Kerwin or Cantelou Brothers had any authority to bind the defendant, and could only prejudice the defendant's case, and in that the court erred in directing a verdict in favor of the plaintiff for the full amount of difference between the contract price and the amount paid for peanuts repurchased by the plaintiff. The court granted a new trial. The plaintiff excepted and assigned error on the order granting a new trial. The defendant filed a cross-bill of exceptions alleging error on its exceptions pendente lite to the order of the court overruling its demurrers to paragraphs 6 and 9 of count 2 of the petition.

■ The court did not err in sustaining the motion for new trial. Ground 1 shows timely objection by the defendant to the admission of a number of letters and telegrams which passed between the plaintiff and the brokers who acted for the defendant in selling the peanuts. A large number of these communications were made after the defendant had defaulted in shipping the peanuts and after the plaintiff had attempted to protect itself by repurchase. Ordinarily a broker's services are completed when a binding contract is effected between buyer and seller, and thereafter, in the absence of any special circumstances, the broker no longer represents the seller. Of course, the plaintiff could not sustain its case with self-serving declarations to third parties, nor would statements or admissions by the brokers made after their services had ended be binding on their former principal. The letters and telegrams between the brokers and the defendant which are specified in the motion for new trial were subject to the objections made by the defendant, and their admission was ground for a new trial.

■ The second ground of the motion contends that the court erred in directing a verdict for the plaintiff. This ground also was well taken. It will be noticed that according to rule 6 the buyer, after telegraphing notice of his intention to do so given 24 hours in advance, confirmed by letter, may at any time within 48 hours cancel the unfilled portion of the contract or repurchase for account of the seller. This does not mean that the buyer may cancel or repurchase 24 hours after sending a telegram to the defendant, but notice must be "given" 24 hours in advance. When

notice is given the party notified receives notice at the same time. Therefore the rule necessarily means that the 24 hours are to be counted from the time the party notified receives the telegraphic notice. While rule 9 providing that "receipt of telegram shall mean receipt at the office of the telegraph company at destination" is not clear, the entire rule not being before the court, it possibly might apply to the matter of giving notice under rule 6. However, the evidence showed that as to the car which should have been shipped in November the plaintiff sent a telegram on Saturday, December 12, 1936, and purchased another car on Monday, December 14. As to the car which should have been shipped in December the plaintiff alleges that it telegraphed the defendant on January 2, 1937, and on the same day purchased another car. It is true that there was evidence showing that the second car was bought on January 5, instead of January 2, but this is immaterial for it was necessary for the plaintiff to show the time when the defendant received the telegraphic notice. Otherwise there is no way to tell when the 24-hour period began to run.

The plaintiff in error contends that there is a presumption of delivery of a telegram similar to that which exists in the case of a letter. All that the plaintiff alleges is that he telegraphed to the defendant by delivering the messages to the telegraph company, there being no allegation as to payment of the charges, or as to the fact of transmission, or as to the time when they arrived at the telegraph office in Cairo, Georgia, or as to the times when the Cairo office delivered the messages to the defendant. In *Abercrombie* v. *Georgia Distributing Co.*, 43 *Ga. App.* 258 (3) (158 S. E. 530), where a telegram was delivered to a messenger boy of the telegraph company but it was not shown that the charge for sending it was paid by the sender, it was held that the evidence did not authorize any presumption that the message was ever transmitted and delivered to the addressee. The court cited two Supreme Court decisions which involved letters. The decision of this court above cited furnishes no basis for holding that there is ever a presumption that a telegram was delivered to the addressee on the same day it was delivered to the telegraph company. The court further held that a notice of less than thirty minutes was insufficient as a matter of law, and "especially is this true where there is nothing to show when the message was received by the defendant, and some time

must have been consumed in its transmission." Under the allegations and the evidence the plaintiff failed to show compliance with rule 6 on which it relied and which both parties conceded to be a part of the contract between them. It follows that it was error to direct a verdict, and the court did not err in granting a new trial.

3. The cross-bill of exceptions complained that the court erred in overruling demurrers to paragraphs 6 and 9 of count 2 of the petition. It is clear from what has been said above that the court erred in overruling these demurrers on the ground that the allegations of those paragraphs did not show that the cars which the defendant bought to replace the cars contracted for were bought in accordance with rule 6.

*Judgment affirmed on the main bill of exceptions. Reversed on the cross-bill. Sutton and Felton, JJ., concur.*